USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/09/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTOR HERNANDEZ,
                          Plaintiff,

-against-

C.O. BRYAN W. EULL, *et al.*,
                          Defendants.

No. 20-cv-4435 (NSR)
**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Victor Hernandez ("Plaintiff") brings this action against Corrections Officer Bryan W. Eull, Corrections Officer Raymond Latourette, and Lieutenant Robert Cocuzza ("Defendants"). Plaintiff asserts a claim under the Eight Amendment to the United States Constitution pursuant to 42 U.S.C. §§ 1983 ("Section 1983) and 1988 ("Section 1988").

Presently before the Court is Defendants' motion for summary judgment seeking dismissal of Plaintiff's Complaint, (ECF No. 1), in its entirety. For the reasons articulated below, the Court GRANTS the motion and dismisses the Complaint.

**FACTUAL BACKGROUND**

The facts below are taken from Defendants' Local Rule 56.1 Statement ("Defs. 56.1", ECF No. 55), Plaintiff's Response to Defendants' Local Rule 56.1 Statement ("Pl. Resp. 56.1", ECF No. 62), affidavits, declarations, and exhibits,[1] and are not in dispute except where so noted.

---

[1] Citations to "Pl. Ex." Refer to Exhibits attached to the Declaration of Alan D. Levine, Esq. in Opposition to Defendants' Motion for Summary Judgment (ECF No. 63). Citations to "Defs. (S) Ex." refer to Exhibits attached to the Declaration of Neil Shevlin in Support of Defendants' Motion for Summary Judgment (ECF No. 57). Citations to "Defs. (C) Ex." refer to Exhibits attached to the declaration of Robert Cocuzza in Support of Defendants' Motion for Summary Judgment (ECF No. 58). Citations to "Defs. (E) Ex." refer to Exhibits attached to the declaration of Bryan Eull in Support of Defendants' Motion for Summary Judgment (ECF No. 59). Citations to "Defs. (L) Ex." refer to Exhibits attached to the declaration of Raymond Latourette in Support of Defendants' Motion for Summary Judgment (ECF No. 60).

1

*The Plaintiff & Defendants*

Plaintiff is an incarcerated individual ("I/I") currently incarcerated by the New York State Department of Corrections and Community Supervision. (Defs. 56.1 ¶ 1). Plaintiff was previously incarcerated at Fishkill Correctional Facility ("Fishkill") on June 16, 2017, when the events giving rise to this action occurred. (*Id.* ¶ 2).

Defendants were all employed at Fishkill in June 2017, with Defendants Eull and Latourette employed as Correctional Officers ("COs") and Defendant Cocuzza employed as a Lieutenant. (*Id.* ¶¶ 3-5).

*The Fishkill Facility & Procedures*

The 21A building at Fishkill contains three segregated housing units known as Special Housing Units ("SHU"), designated SHU-O, -P, and -Q, where I/Is are sent after commission of a disciplinary infraction and being deemed a danger to themselves, other I/Is, or Fishkill staff. (*Id.* ¶¶ 6-7, 25).

I/Is held in SHUs are entitled to one hour of recreation in the recreation yard per day. (*Id.* ¶ 8). Prior to being let out of their cells to proceed to the recreation yards, I/Is place their hands through an opening in their cell door and are fitted with mechanical restraints. (*Id.* ¶ 10). Those restraints are removed when the I/Is reach the recreation yard. (*Id.* ¶ 12).

When it is time to return to their cells, the I/Is line up in single-file and are again fitted with mechanical restraints, with their hands kept in front of their bodies. (*Id.* ¶ 13). I/Is are returned to their cells one or two at a time. (*Id.* ¶ 15).

The SHU blocks each contain twenty-eight cells, and I/Is located in the rear of the housing block are returned to their cells first. (*Id.* ¶¶ 16-17). When told to proceed to their cell, I/Is are told to assume a "pat frisk" position with their hands high and flat against the wall next to their cell's door. (*Id.* ¶¶ 20-21). A CO then performs a pat frisk to ensure no I/I has contraband. (*Id.* ¶ 22). After the

frisk, an I/I will reenter their cell, the cell door will be secured behind them, and the I/I will place their hands through an opening in the cell door to have the mechanical restraints removed. (*Id*. ¶¶ 23-24).

*The Use of Force Incident*

Plaintiff was assigned to cell #5 in SHU-P on June 16, 2017. (*Id*. ¶ 26). Cell #5 is located towards the front of SHU-P. (*Id.*).

Defendants Eull and Latourette were both assigned to work in SHU-P during the events germane to this action. (*Id*. ¶¶ 27, 29). Among their duties was escorting I/Is to and from recreation. (*Id*. ¶¶ 28, 30).

Plaintiff went to recreation on June 16, 2017. (*Id*. ¶ 32). I/Is began returning from recreation at approximately 10:47am. (*Id*. ¶ 33). Around 10:47:16am, Plaintiff was directed to proceed to his cell and assume the pat frisk position. (*Id*. ¶ 36). Roughly thirty seconds later, Defendant Eull conducted a pat frisk on Plaintiff, discovering no contraband. (*Id*. ¶ 37).

After conducting the pat frisk, Defendant Eull directed Plaintiff to remain facing the wall next to his cell. (*Id*. ¶ 38). Plaintiff refused to comply and yelled "fuck you, this isn't the military" at Defendant Eull. (*Id*. ¶ 39). At approximately 10:49:45am, Defendant Latourette approached and directed Plaintiff to place his hands high and flat against the wall in preparation for a pat frisk. (*Id*. ¶ 40). At this point, Defendant Eull was standing to Plaintiff's right, and Defendant Latourette was standing behind and to the right of Plaintiff in a "bladed" position, so assumed to ensure Defendant Latourette's safety. (*Id*. ¶ 41).

COs assume the bladed position when they intend to perform a pat frisk. (*Id*. ¶ 42). The bladed position makes it easier for a CO to move out of the way if an I/I turns around quickly to assault the officer. (*Id*. ¶ 43).

Upon receiving Defendant Latourette's order, Plaintiff initially complied and placed his hands high and flat against the wall. (*Id*. ¶ 44). Plaintiff then dropped his hands and turned towards Defendant Latourette. (*Id*. ¶ 46).[2] Upon seeing Plaintiff drop his hands, Defendant Latourette stepped toward Plaintff, placed him in a "bear-hug-type hold", and took Plaintiff to the floor. (*Id*. ¶ 47). Plaintiff asserts he was thrown to the floor. (Pl. Resp. 56.1 ¶ 47). The parties dispute whether Plaintiff landed on his back. (*See Id*. ¶ 48).

The parties dispute whether Defendant Latourette used his body weight to secure Plaintiff's legs and Defendant Eull used his bodyweight to secure Plaintiff's torso and hands or whether, after Plaintiff was on the ground, Defendants Latourette and Eull repeatedly struck Plaintiff. (Defs. 56.1 ¶ 49-50; Pl. Resp. 56.1 ¶ 49-50). While on the ground, one of Plaintiff's mechanical restraints came loose and his hand came free from the restraint. (Def. 56.1 ¶ 51). Plaintiff asserts the mechanical restraint came loose as a result of the force with which Plaintiff was taken to the floor. (Pl. Resp. 56.1 ¶ 51). Plaintiff was returned to his cell at approximately 10:51:57am. (Def. 56.1 ¶ 52). The entire incident lasted approximately two minutes (the incident, in its entirety, the "UOFI"). (*Id*. ¶ 53).

*After the UOFI*

Following the incident, Plaintiff was examined by Fishkill Nurse Weinrit that same day. (*Id*. ¶ 54). Nurse Weinrit's report indicated Plaintiff "state[d] he was pushed and fell to the ground hitting the floor on is left side" and noted "swelling with superficial abrasion" on the left hip along with "the left shoulder area looks higher than the right side. No warmth, bruising, or swelling." (*Id*. ¶ 55). Nurse Weinrit's report does not indicate that Plaintiff told her at any point that Defendants Eull or Latourette punched or kicked him. (*Id*. ¶ 57).

---

[2] The parties dispute whether Plaintiff dropped his hands in an "aggressive" manner. (Defs. 56.1 ¶ 46; Pl. Resp. 56.1 ¶ 46).

Defendant Latourette drafted an Inmate Misbehavior Report ("IMR") regarding the UOFI, which was subsequently served on Plaintiff. (*Id*. ¶ 58). The IMR charged Plaintiff with three disciplinary violations: (1) refusing a direct order; (2) creating a disturbance; and (3) violent conduct. (*Id*. ¶ 59).

At a disciplinary hearing, Plaintiff pled guilty to refusing a direct order and creating a disturbance. (*Id*. ¶ 60). Plaintiff again made no allegations of being punched or kicked at this hearing. (*Id*. ¶ 61). The hearing officer found Plaintiff guilty of all the charges against him, including violent conduct. (*Id*. ¶ 63).

## PROCEDURAL HISTORY

Plaintiff initiated this action on June 10, 2020. (ECF No. 1). After numerous requests for extensions were granted (*see* ECF Nos. 8-13), Defendants answered on November 20, 2020. (ECF No. 14).

Following a lull, discovery opened on April 19, 2021. (ECF No. 22). This Court granted Defendants leave to file a motion for summary judgment at a conference held on September 8, 2022. (*See* Minute Entry for Proceedings Held Before Judge Nelson S. Román, September 8, 2022). The parties requested a number of extensions to file their respective papers. (*See* ECF Nos. 48-53).

The parties submitted the fully briefed motion for summary judgement on April 4, 2024, consisting of, among others: (1) Defendants' (a) First Motion for Summary Judgment (ECF No. 54); (b) Memorandum of Law in Support of First Motion for Summary Judgment ("Defs. Mem", ECF No. 56); (c) Reply Memorandum of Law in Support of First Motion for Summary Judgment (ECF No. 64); and (2) Plaintiff's Memorandum of Law in Opposition to First Motion for Summary Judgment ("Pl. Opp.", ECF No. 61).

5

## LEGAL STANDARD

### I. Fed. R. Civ. P. 56

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," *see* Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; a*ccord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Courts must "draw all rational inferences in the non-movant's favor," while reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250. Summary judgment should be granted when a party "fails to make

6

a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

Critically, in an opposition to a motion for summary judgment "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation") (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

## DISCUSSION

Plaintiff asserts that his right to be free from cruel and unusual punishment as guaranteed by the Eight Amendment to the United States Constitution was violated during the UOFI. (Compl. ¶ 25). In particular, he appears to argue that Defendants Eull and Latourette exerted excessive force on Plaintiff and that Defendant Cocuzzo failed to intervene. (*Id*. ¶¶ 21-27). Plaintiff asserts this action via Section 1983 and, additionally, seeks costs and disbursements, including attorneys' fees, pursuant to Section 1988. (*Id*. ¶¶ 2, 28).

### I. The Eight Amendment

#### a. Excessive Force

An Eight Amendment claim for cruel and unusual punishment contains both an objective and subjective prong. *Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The subjective prong is satisfied when, in light of the particular circumstances surrounding the challenged conduct, a claimant shows the defendant "had the necessary level of culpability, shown by actions characterized by wantonness." *Id*. (quoting *Wright v. Goord*, 554 F.3d 225, 268 (2d Cir. 2009)) (cleaned up). To show wantonness in an excessive force claim, courts

consider "whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)).

> To determine whether defendants acted maliciously or wantonly, a court must examine several factors including: the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.

*Id*. at 63-64. (internal quotations omitted).

As to the objective prong, the court is to "look at the harm done, in light of contemporary standards of decency." *Beauvoir v. Falco*, 345 F. Supp.3d 350, 363 (S.D.N.Y. 2018) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)) (internal quotations omitted). When asserting an excessive force claim in the context of corrections officers, however, courts have held there is essentially strict liability after a showing that meets the subjective prong. *Id*. at 364 (citing *Hudson*, 503 U.S. at 9). Still, not every "malevolent touch" of a CO gives rise to a federal cause of action and injuries alone are not dispositive. *Id*.

Plaintiff fails to show a genuine dispute of material fact as to the wantonness of Defendants Eull and Latourette's actions. As to the Defendant Latourette's mental state, Plaintiff alleges Defendant Latourette exhibited hostility towards him and made threats towards Plaintiff. (Pl. Resp. 56.1 ¶ 64-65). Even taking these allegations as true, notably: (1) Plaintiff admits such hostility and threats occurred prior to the UOFI, providing little insight to Defendant Latourette's contemporaneous mindset, and (2) Defendant Eull, not Defendant Latourette, gave Plaintiff the order to remain facing the wall that incited the UOFI. (Defs. 56.1 ¶¶ 38-39; *see also* Pl. Resp. 56.1 ¶¶ 64-65).

Moreover, Plaintiff admits that, after the completion of the pat frisk and receiving the order to remain facing the wall, he yelled an expletive at Defendant Eull. (Defs. 56.1 ¶¶ 38-39). That is, Plaintiff was the initial escalator of the situation by reacting hostilely and without provocation. Even

though Plaintiff did eventually comply with the order to place his hands on the wall, (*id*. ¶ 44), it is indisputable that Defendants were dealing with an I/I who exhibited hostility and a willingness to disobey orders. This concern is compounded by the fact that I/Is are placed in the SHU because of prior disciplinary infractions. (Defs. 56.1 ¶ 25). Taken together, Plaintiff's historical and contemporary refusals to comply with orders rendered further orders likely ineffective, providing a basis for Defendant Latourette to resort to reasonable force.

The structure of the SHU is also relevant. I/Is whose cells are located towards the rear of the cell block are returned first, proceeding down the cell block until all of the I/Is are back in their cells. (Defs. 56.1 ¶¶ 17-18). Plaintiff was assigned to cell #5, which is near the front of the cell block but with at least eight cells ahead of it. (*Id*. ¶ 26; *see also* Defs. Ex. (E) A (it is clear from the video that cells 1 through 14 run on one side of the block, with cells 15-28 run on the opposite side. Therefore, cell #14 is opposite cell #28, and so forth)). It is not clear from the video how many, or if any, I/Is were waiting outside the cell block to return to their cells. What is clear, however, is two other COs rushing to return I/Is already in the cell block, who were standing in the pat-frisk position, to their cells after Defendant Latourette took Plaintiff to the ground. (Defs. Ex. (E) A). Continued refusals by Plaintiff to comply with orders while other I/Is—again, I/Is specifically in this unit because of disciplinary infractions (Defs. 56.1 ¶ 25)—are outside of their cells is a very dangerous situation for the Fishkill COs. This danger is further heightened by the fact one of the mechanical restraints on Plaintiff had failed as he was on the ground. (*Id*. ¶ 51). In sum, then, the "threat reasonably perceived by the [Defendants]" was both real and significant. *Harris,* 818 F.3d at 63-64.

It is true that, despite Nurse Weinrit's report indicating Plaintiff had relatively superficial injuries and demonstrated mobility during his examination, (*see* Defs. Ex. (S) D), Plaintiff suffered a fractured left hip and clavicle, a rotator cuff tear, and probably fracture of his left elbow. (Pl. Ex. 7). Those findings come from a report completed at Putnam Hospital dated June 16, 2017—the same

9

date as the UOFI. (*Id.*) Plaintiff also provided a sworn statement from a medical expert indicating his opinion that these injuries were caused by the UOFI. (*See* Pl. Ex. 8). Those injuries, however, are only incidental the use of force and, when viewed in light of the rest of the evidence, do not evince wantonness. The evidence, as depicted in the surveillance video, is indisputable that Defendants did not engage in beating Plaintiff once he was on the ground. (*See* Defs. Ex. (E) A; *see also* Pl. Resp. 56.1 ¶¶ 49-50, 52). Defendants Eull and Latourette can be seen simply restraining Plaintiff. (Defs. Ex. (E) A). The indisputable evidence thus indicates they acted with the sole intention to defuse a dangerous situation and not to, despite Plaintiff's allegations, retaliate or purposely injure Plaintiff. In other words, Defendants sought to "temper the forceful response[,]" and did so by only engaging in one forceful act—the initial takedown. *Harris,* 818 F.3d at 63-64. In sum, the indisputable evidence gives no indication of the wantonness necessary to sustain an excessive force claim under the Eighth Amendment. Defendants acted in a "good-faith effort to . . . restore discipline [and not to] maliciously and sadistically . . . cause harm." *Id*.

Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's Eighth Amendment claims against Defendants Eull and Latourette is GRANTED and the claims are DISMISSED.

### b. Failure to Intervene

An officer who "fails to intervene to prevent the use of excessive force against a prisoner is therefore liable for the preventable harm caused by the actions of the other officers where the officer observes that the excessive force is being used." *Stephens v. Venettozzi*, 2016 WL 929268, at *11 (S.D.N.Y. Feb. 24, 2016) (cleaned up). To sustain a failure to intervene claim, a plaintiff must show the defendant saw and had reason to know that: (1) excessive force was being used and (2) had a realistic opportunity to intervene and prevent the harm from occurring. *Carwell v. City of New York*, 21-CV-480, 2023 WL 419182, at *7 (S.D.N.Y. Jan. 26, 2023).

As the Court has held that Defendants Eull and Latourette did not use excessive force, Plaintiff's claim against Defendant Cocuzzo is unsustainable.

Consequently, the Court GRANTS Defendants' motion with respect to Plaintiff's Eighth Amendment claim against Defendant Cocuzzo, which is DISMISSED.

## CONCLUSION

For the reasons provide above, Defendants' motion for summary judgment is GRANTED and all of Plaintiff's claims in this action are DISMISSED against the Defendants. The Clerk of the Court is directed to terminate the motion at ECF No. 54, to enter judgment in favor of the Defendants and terminate the case.

Dated: April 9, 2024
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

11